IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **EVELYN KEESEE,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 19-cv-3543-PWG |
| **Ditech Financial LLC,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Evelyn Keesee initially filed this case *pro se*[1] in the Circuit Court for Prince George's County in November 2019 seeking to obtain resolution from Defendants for a mortgage insurance claim. Compl., ECF No. 8. The case was removed to this Court in December 2019.[2] Not. Removal, ECF No. 1. In essence, Ms. Keesee believes that she and her husband purchased a mortgage protection plan on their home prior to her husband's death, but no record of such coverage has been presented. American Bankers Life Assurance Company of Florida, the purported insurer, has filed the pending Motion for Summary Judgment, ECF No. 38, seeking judgment that it is not liable to pay the mortgage loan. Having reviewed the filings,[3] I find that a

---

[1] In April 2020, counsel entered an appearance for Ms. Keesee. ECF No. 33.
[2] American Bankers Life Assurance Company of Florida removed the case on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, 1441, and 1446. At that time, Defendants Shellpoint Mortgage Servicing, and Ditech Financial, LLC had not been served, but Shellpoint consented to removal, and Ditech's confirmed Chapter 11 bankruptcy plan had taken effect on September 30, 2019. Not. Removal ¶¶ 7-9.
[3] Plaintiff filed a response in opposition, ECF No. 40, and Defendant filed a reply, ECF No. 42.

hearing is unnecessary in this case.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons stated herein, the motion is GRANTED.

## BACKGROUND

In the spring of 2016, the Keesees contacted their mortgage servicer, Ditech Financial, LLC ("Ditech"), to discuss some information they had received about a mortgage protection plan that would pay off the balance of the mortgage in the event of the death of Mr. Keesee, who was ill.  Keesee Interrog. Resp. No. 2, Mot. Ex. 1, ECF No. 38-2.  In response, Ditech mailed a brochure about the Affordable Home Mortgage Protection Program ("AHMPP").  *Id.*  On August 16, 2016, Ms. Keesee returned an information sheet and mortgage data card to Ditech requesting more information.[4]  Ms. Keesee asserts, however, that on July 12, 2016, she received a letter from Ditech "regarding the evidence of required insurance coverage."  *Id.*  She reports that she responded to Ditech's letter in July 2016.  *Id.*  She called Ditech and spoke with someone named Mario, who advised her that "everything was in place" and she needed to speak with another person named Ronda to discuss the policy and escrow account.  *Id.*  At that time, Mario also informed her that there would soon be a service transfer to Shellpoint Mortgage.[5]  *Id.*  Ms. Keesee then called Ronda at Ditech, who confirmed that the AHMPP policy was active, and they discussed the amounts to be collected for premiums for the escrow account.  *Id.*  Ronda stated that all the insurance documentation would be sent to Ms. Keesee, but Ms. Keesee never received anything.  *Id.*  Also on the same day, Ms. Keesee called Shellpoint Mortgage and spoke with a Mr. Pardue, who

---

[4]     Based on Ms. Keesee's interrogatory response, it would appear that this occurred prior to July 2016, after which she had conversations with two individuals by the name of Mario and Ronda at Ditech confirming her coverage, but in her response in opposition, she states that she returned the information to Ditech on August 16, 2016.  *Compare* Keesee Interrog. Resp. No. 2 *with* Pl.'s Resp. 2, ECF No. 40, *and* Mot. Ex. 2, ECF No. 38-3.  Importantly, the exhibit contains a notation that the mortgage data card was sent to Ditech on August 16, 2016, and it has a timestamp with that date.  Mot. Ex. 2.
[5]     NewRez, LLC, d/b/a Shellpoint Mortgage Servicing.  Shellpoint Decl., Mot. Ex. 5, ECF No. 38-6.

informed her that Shellpoint Mortgage did not yet have the loan and that she should contact Ditech for additional information. *Id.* Ms. Keesee immediately called Mario at Ditech, and he confirmed "that the AHMPP was in place and that everything was ok." *Id.*

About six months later, in February 2017, Mr. Keesee passed away. *Id.* In April 2017, Ms. Keesee called Shellpoint Mortgage to ask how to make a claim for the AHMPP and was advised by Mr. Pardue that she needed to contact Ditech for the policy. *Id.* Ms. Keesee contacted Ditech but was not able to get a copy of the AHMPP policy. *Id.* Beginning in May 2017, Ms. Keesee began falling behind on her mortgage payments, and in March 2018, foreclosure was initiated. *Id.* at No. 7. Ms. Keesee attests that she spent two years trying, unsuccessfully, to get a copy of the AHMPP policy from Ditech. *Id.* at No. 2. In April 2019, Ditech finally advised her to contact American Bankers Life Assurance Company of Florida ("ABLAC") and make a claim. *Id.*

Ms. Keesee contacted ABLAC on April 17, 2019. *Id.*; ABLAC's Interrog. Resp. No. 5, Mot. Ex. 3, ECF No. 38-4. The claims department advised Ms. Keesee that it was unable to locate any policy based on the information she supplied but sent claim forms to be completed and requested a copy of the policy. ABLAC's Interrog. Resp. No. 5. Ms. Keesee received the package, but it was addressed to Mr. Keesee with a claim form and instructions. Pl.'s Interrog. Resp. No. 2. Ms. Keesee contacted ABLAC again to correct the information and asked for a new claim form. *Id.* On August 26, 2019, ABLAC's claims department sent a claims package to Ms. Keesee, noting the type of loss as "life" and the creditor as "Ditech." *Id.* She completed the package and returned it to ABLAC in September 2019. ABLAC responded on September 12, 2019, requesting additional information. *Id.*[6] Ms. Keesee resubmitted the updated package to ABLAC, but she

---

[6] ABLAC states that it is unable to locate any applicable policy issued to either Mr. or Ms. Keesee. ABLAC Interrog. Resp. Nos. 5, 6. The correspondence stated that if Ms. Keesee wished to resubmit the

3

states that she never heard back after that. *Id.* Because no policy could be located, the claim was ultimately denied. Pl.'s Resp. 3. On November 8, 2019, Ms. Keesee initiated this lawsuit against Ditech, Shellpoint Mortgage, and ABLAC. Compl. 2-3.

Ditech filed for Chapter 11 bankruptcy protection in early 2019. Not. Removal ¶ 9; Not. Ex. 1, ECF No. 1-1.[7] Ms. Keesee's counsel reached out to Ditech's legal department and bankruptcy counsel, and issued a subpoena in the hope of obtaining her original mortgage and insurance records but nothing has been added to the record since August 2020. Pl.'s Resp. 3. Ms. Keesee voluntarily dismissed Shellpoint on August 10, 2020. ECF Nos. 39, 41. Shellpoint declares that it is the current servicer of Ms. Keesee's mortgage. Shellpoint Decl. ¶ 3, Mot. Ex. 5, ECF No. 38-6. When Ditech transferred servicing rights to Shellpoint, it also transferred its loan documents, but upon a review of the file, Shellpoint "did not locate any record indicating that Evelyn Keesee and/or Kenneth Keesee had enrolled in a mortgage protection plan, whether through American Bankers Life Assurance Company of Florida or any other insurer." *Id.* at ¶¶ 4-6. ABLAC filed the pending motion for summary judgment in its favor because Plaintiff has not produced any evidence of a contract for insurance with ABLAC.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

---

claim, she needed to attach a copy of the policy and a complete account number. Mot. Ex. 4, ECF No. 38-5. It also stated that the "claim cannot be processed without the item(s) requested." *Id.*

[7]   It appears that Ditech has never been served. Not. Removal ¶ 9. Ms. Keesee's counsel reported on June 3, 2020 that she had forwarded a notice of filing and request for waiver of service of summons to Ditech on April 28, 2020, but there is no information on the record regarding service. *See* Joint Status Rpt. 2, ECF No. 34.

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).

## ANALYSIS

ABLAC advances a straightforward argument in support of its motion—there can be no breach of contract by its refusal to pay a claim for insurance coverage where there is no evidence that the contract exists or ever existed. Mot. Mem. 5. To establish a claim for breach of contract, a plaintiff must demonstrate that a contract was formed. *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 761 (D. Md. 2010) (citing *Parlette v. Parlette*, 596 A.2d 665, 671 (Md. Ct. Spec. App. 1991)). Ms. Keesee agrees that she never received and cannot produce any documentation of an insurance policy. Pl.'s Resp. 4. Here, the only facts pointing to the existence of a mortgage protection plan are Plaintiff's averments that she spoke with representatives at Ditech, not

5

ABLAC, who assured her on the telephone that an insurance policy was in place. Keesee Interrog. Resp. No. 2.  Those assurances did not indicate the name of the insurance company that provided the policy nor did they provide any account information or policy number.  Neither has Ms. Keesee produced any evidence of payment of the premiums for the insurance policy she insists existed.  And Ms. Keesee states that she first became aware of ABLAC only after two years of trying to get policy information from Ditech for making a claim.  *Id.*

Although ABLAC admits that it does offer a credit life insurance policy and that some customers pay premiums for this type of insurance to their mortgage servicer, such as Ditech, it conducted a search for an insurance policy and was unable to locate any evidence of coverage on either Plaintiff or her husband.  ABLAC Interrog. Resp. Nos. 5, 6.  Ms. Keesee indicates that she continues to try to obtain records from Ditech, but she has been trying to do so since April 2017 to no avail. Further, Shellpoint, which took over the mortgage servicing and all the documents from Ditech, testifies that it conducted a review of the file and "did not locate any record indicating that Evelyn Keesee and/or Kenneth Keesee had enrolled in a mortgage protection plan, whether through American Bankers Life Assurance Company of Florida or any other insurer." Shellpoint Decl. ¶¶ 4-6.

Not only can Ms. Keesee not produce a policy or policy number, but she has not produced any indicia of evidence that the purported policy was issued by ABLAC. And, as noted, Ms. Keesee has failed to produce any evidence of ever paying any premiums for a mortgage protection plan—no bills, statements, cancelled checks, or even a declaration of making such payments.  The record also contains inconsistencies related to the telephone conversations in which she allegedly was assured that the policy was in place in July 2016 compared to the exhibit demonstrating that

6

she sent the request for information and mortgage data card to Ditech in August 2016. *See* Mot. Ex. 2; Pl.'s Resp. 2.

In short, Ms. Keesee has failed to produce even a scintilla of evidence to demonstrate that a contract was formed or that would raise a material dispute of fact sufficient to allow this case to proceed to trial.

## CONCLUSION

Accordingly, Defendant American Bankers Life Assurance Company of Florida's Motion for Summary Judgment, ECF No. 38, is GRANTED, and Plaintiff's claims against ABLAC are dismissed.

## ORDER

For the foregoing reasons, it is, this 19th day of March, 2021, hereby ORDERED that:

1. Defendant American Bankers Life Assurance Company of Florida's Motion for Summary Judgment, ECF No. 38, is GRANTED.

2. Judgment is hereby entered in favor of the Defendant American Bankers Life Assurance Company of Florida, against the Plaintiff Evelyn Keesee. This Order shall be deemed to be a Final Judgment within the meaning of Rule 58 of the Federal Rules of Civil Procedure.

_____/S/_____
Paul W. Grimm
United States District Judge